IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BECANTE T. REYES,               )      CIVIL NO. CV07-00229 SOM/KSC
                                )
            Plaintiff,          )
                                )      ORDER GRANTING DEFENDANTS'
        vs.                     )      MOTION FOR PARTIAL SUMMARY
                                )      JUDGMENT
HMA, INC.; JOHN DOES 1-10;      )
DOE ENTITIES 1-10,              )
                                )
            Defendants.         )
_____ )


ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

I.      INTRODUCTION.

        This removed action based on diversity of citizenship
involves an age discrimination claim asserted solely under Hawaii
law.  Plaintiff Becanta T. Reyes was 39 years old at the time she
was fired by Defendant HMA, Inc.  In her Complaint, originally
filed in state court on March 29, 2007, Reyes asserts that she
was fired because of her age.  She also asserts that she suffered
age discrimination during the course of her employment with HMA,
as well as emotional distress arising out of HMA's conduct.

        On February 20, 2008, HMA moved for partial summary
judgment.  That motion is granted.  To the extent the Complaint
asserts that, between October 24, 2005, and May 2006, Reyes was
assigned more work than younger coworkers because of Reyes's age,
that claim is barred because Reyes failed to timely exhaust her
administrative remedies with respect to that claim.  Reyes's
claims that, because of her age, she did not receive a promotion

in February 2006 and was unfairly reprimanded in July 2006 are barred for the same reason.  To the extent the Complaint asserts a claim of age discrimination in violation of section 378-2 of the Hawaii Revised Statutes, summary judgment is granted in favor of HMA because Reyes has failed to raise a genuine issue of fact as to whether HMA's legitimate, nondiscriminatory reasons for firing her were pretextual.  Summary judgment is also granted in favor of HMA on Reyes's intentional infliction of emotional distress claim and her request for punitive damages.  This order leaves for further adjudication Count II, which asserts a breach of implied contract claim.

II.      BACKGROUND.

        Reyes, born in 1967, previously worked for the State of Hawaii, Department of Human Services, Child Care Licensing Unit, and the Queens Health Care Plan.  See Declaration of Becanta T. Reyes (Apr. 3, 2008) ¶¶ 1-3.  Reyes was then hired by HMA as a customer service representative on October 24, 2005, when she was 38 years old.  Id. ¶ 6.  The other customer service representatives working at HMA with Reyes were younger than she was.  Id. ¶ 10; Ex. 9 to Plaintiff's Concise Statement (Apr. 3, 2008) (Defendant HMA, Inc.'s Response to Plaintiff's First Request for Interrogatories).

        Reyes says that she was the quickest and most productive customer service representative.  Reyes Decl. ¶ 8.

She says that she was rated "outstanding" on her August 2006 semi-annual performance evaluation. Id. ¶ 9. Reyes nevertheless attributes HMA's alleged assignment of more work to her than to younger customer service representatives to her age. Id. ¶ 11(a). In February 2006, after Reyes had been working for HMA for about four months, she failed to get a promotion to a manager position that she had applied for. She says she was denied the promotion because of her age. Id. ¶ 11(b).

HMA has a corrective counseling policy under which an employee thought to have discipline issues is given two warnings before being fired. Nothing in the policy requires that the warnings be for the same type of misconduct. It is undisputed that Reyes received two corrective counseling warnings for excessive absenteeism and tardiness.

Reyes was also reprimanded for rudeness to a customer in July 2006, although she says that she was blamed for someone else's rudeness. See Reyes's Depo. at 77, 80-81. Additionally, Reyes was reprimanded for rudeness to a customer in October 2006. Reyes Depo. at 82. About a month later, on November 22, 2006, a supervisor received a voicemail message from Mija Ku-Sakata of Castle Medical Center, complaining about a telephone conversation she had had with Reyes. Declaration of Stacey Visitacion (Feb. 20, 2008) ¶ 9. The supervisor says that she called Ku-Sakata back and asked her to send a letter about the incident. Id.

3

Upon hearing about this latest incident, the general manager/vice president of HMA decided to fire Reyes.  Id. ¶ 11; Declaration of Harris Nakamoto (Feb. 20, 2008) ¶ 21.  Reyes was fired on November 29, 2006, a little more than a year after she was hired.  Nakamoto Decl. ¶ 22.  Reyes asserts that she was fired because of her age.

III.    ANALYSIS.

A.    Reyes Failed to Exhaust Her Administrative
Remedies With Respect to Some of Her Claims.

Some of Reyes's claims under chapter 378 are barred by her failure to exhaust the administrative remedies provided by state law.  Under Hawaii law, when a remedy is available from an administrative agency, a party must exhaust that remedy before seeking judicial relief.  See Pele Defense Fund v. Puna Geothermal Venture, 9 Haw. App. 143, 151, 827 P.2d 1149, 1154 (1992).  The Hawaii Revised Statutes provide that an individual claiming to be aggrieved by an alleged unlawful discriminatory practice may file a complaint with the Hawaii Civil Rights Commission ("HCRC"), upon receipt of which the HCRC's executive director shall investigate the matter.  See Haw. Rev. Stat. §§ 368-11 and 368-13.  The HCRC may issue a notice of right to sue upon written request by the complainant.  See Haw. Rev. Stat. § 368-12.  The Hawaii Supreme Court has held that the legislature's decision to authorize the HCRC to issue a notice of right to sue implies that the receipt of such a notice is a

4

condition to the bringing of a civil action for violation of chapter 378.  See Ross v. Stouffer Hotel Co., 76 Haw. 454, 460, 879 P.2d 1037, 1043 (1994) ("The logical implication of the legislature's decision to authorize the [Department of Labor and Industrial Relations] to issue a right to sue is that it was a precondition to bringing a civil action for violation of HRS § 378-2; if it were not, the power to issue a right to sue would have been meaningless."); accord Linville v. Hawaii, 874 F. Supp. 1095, 1104 n.4 (D. Haw. 1994) ("Plaintiff has not presented this Court with notice of any such right-to-sue under H.R.S. §§ 378-2 and 378-62.  Thus, Plaintiff's claims under these provisions must also be dismissed as premature.").

Section 368-11(c) of the Hawaii Revised Statutes requires claims to be filed with the HCRC within 180 days after the date "[u]pon which the alleged unlawful discriminatory practice occurred" or after "the last occurrence in a pattern of ongoing discriminatory practice."  The Hawaii Supreme Court has characterized this as a "statute of limitations period" and noted that a complaint alleging unlawful discrimination must be brought "within 180 days after either the occurrence of the alleged discriminatory practice or the last occurrence in a pattern of ongoing discriminatory practice."  Sam Teague, Ltd. v. Haw. Civ. Rights Comm'n, 89 Haw. 269, 276, 971 P.2d 1104, 1111 (1999).

It is undisputed that Reyes filed a complaint with the HCRC on February 7, 2007.  It is also undisputed that some of the acts she complains of occurred more than 180 days before February 7, 2007.  For example, Reyes complains that, between October 24, 2005, and May 2006, she was assigned more work than younger employees.  See Complaint ¶ 18(a).  She complains that, in February 2006, a younger employee was promoted to manager.  See id. ¶ 18(b).  She asserts that, in July 2006, she was wrongfully reprimanded for being rude to a customer when, in fact, it was a younger employee who was actually rude to the customer.  See id. ¶ 18(c).  To the extent Reyes's age discrimination claims are based on these specific events, her claims are time-barred because she failed to file an administrative complaint with the HCRC within 180 days of these events.  See Haw. Rev. Stat. § 368-11(c).

Reyes could sue based on these specific incidents if they were part of a "pattern of ongoing discrimination" that continued into the HCRC limitation period.  However, although Reyes refers to the past incidents, she never argues that they formed such a pattern.  Reyes lists only her termination as an adverse employment action.  See Opposition at 8.  She has provided no response, either written or oral, to HMA's express argument that incidents dating back more than 180 days before the HCRC filing are time-barred.  Under these circumstances, the

6

court, deeming Reyes to be conceding the untimeliness issue raised by HMA, does not create a "pattern" argument for Reyes. While certainly drawing _factual_ inferences in Reyes's favor, the court is not required to create for a party responses to legal challenges.

The HCRC's issuance of a notice of right to sue to Reyes does not indicate that the HCRC determined that Reyes had indeed exhausted her administrative remedies with respect to claims more than 180 days old.  The HCRC's dismissal of Reyes's charge of discrimination did not, after all, embody a determination by the HCRC that Reyes's claims were timely or that the HCRC had jurisdiction over Reyes's claims.

Although this court grants summary judgment in favor of HMA on the claims for which Reyes failed to exhaust her administrative remedies, it does not follow that evidence pertaining to those events is necessarily inadmissible.  The court can certainly see how events not directly sued on can be relevant to an event that is sued on.  For example, a plaintiff trying to establish pretext might well refer to events not directly sued on to bolster an argument that an employer is raising a pretextual justification for the event that is indeed sued on.

7

B.   Reyes Fails to Raise a Genuine Issue of Fact as to
     Whether the Reasons She Was Terminated Were
     Pretextual.

Clearly not time-barred is Reyes's wrongful termination

claim.  Section 378-2(1)(A) of the Hawaii Revised Statutes

prohibits employers from discharging from employment any

individual because of his or her age.  See Haw. Rev. Stat. § 378-

2(1)(A) ("It shall be an unlawful discriminatory practice:

(1) Because of . . . age . . . : (A) For any employer to . . .

discharge from employment, or otherwise to discriminate against

any individual in compensations or in the terms, conditions, or

privileges of employment"); Shoppe v. Gucci Am., Inc., 94 Haw.

368, 377, 14 P.3d 1049, 1058 (2000) ("Hawaii's Employment

Discrimination Law prohibits employers from discharging an

individual because of his or her age.").

In an intentional discrimination case involving members

of a protected class (a disparate treatment case) a plaintiff

asserting a violation of section 372-2(1)(A) can prove disparate

treatment through "direct evidence that discriminatory factors

motivated the adverse employment decision."  Shoppe, 94 Haw. at

378, 14 P.3d at 1059.  When a plaintiff makes this showing, "the

burden shifts to the employer to prove that it would have taken

the same adverse employment action against plaintiff absent the

discrimination."  Id.  Disparate treatment may also be proved

through circumstantial evidence using the burden-shifting

8

analysis set forth in <u>McDonell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>Shoppe</u>, 94 Haw. at 378, 14 P.3d at 1059.  Reyes is attempting to demonstrate disparate treatment through circumstantial evidence.

> 1.   For Purposes of This Motion, Reyes Has
>       Sufficiently Demonstrated a Prima Facie
>       <u>Violation of Section 378-2(1)(A).</u>

In <u>McDonnell Douglas</u>, the Supreme Court analyzed an employment discrimination case in three steps.  In the first step, as the Hawaii Supreme Court recognized, the plaintiff must make a prima facie showing of discrimination:

> First, the plaintiff must establish a prima
> facie case of discrimination by
> demonstrating, by a preponderance of
> evidence, the following four elements: (1)
> that plaintiff is a member of a protected
> class; (2) that plaintiff is qualified for
> the position for which plaintiff has applied
> or from which plaintiff has been discharged;
> (3) that plaintiff has suffered some adverse
> employment action, such as a discharge; and
> (4) that the position still exists.

<u>Shoppe</u>, 94 Haw. at 378, 14 P.3d at 1059; <u>see also</u> <u>Schefke v. Reliable Collection Agency, Ltd.</u>, 96 Haw. 408, 437-38, 32 P.3d 52, 81-82 (2001) (stating that, in <u>Shoppe</u>, the Hawaii Supreme Court "laid out a prima facie case for age discrimination involving hiring and discharge").

Because this court is interpreting Hawaii law, this court is bound by the Hawaii Supreme Court's statement of the prima facie case for an age discrimination claim.  The court

agrees with Reyes that <u>Shoppe</u> sets forth the applicable analytic framework, and the court rejects HMA's reliance on <u>Beaulieu v. Northrop Grumman Corp.</u>, 161 F. Supp. 2d 1135, 1145-46 (D. Haw. 2000), <u>aff'd</u> 23 Fed. Appx. 811 (9th Cir. 2001).  <u>Beaulieu</u> was a federal district court decision discussing the prima facie age discrimination claim under the federal Age Discrimination in Employment Act ("ADEA").

The prima facie claims under the ADEA as set forth by <u>Beaulieu</u> and under section 378-2 are not identical.  Under the ADEA, the second prong of the prima facie test requires evidence that the plaintiff "was performing his job in a satisfactory manner."  <u>Beaulieu</u>, 161 F. Supp. 2d at 1145.  Section 378-2 states the second prong of the prima facie test differently.  Although the evidence and result may frequently overlap with that of the ADEA's second prong, under section 378-2 the test is whether the "plaintiff is qualified for the position for which plaintiff has applied or from which plaintiff has been discharged."  <u>Shoppe</u>, 94 Haw. at 378, 14 P.3d at 1059.  The fourth prong of the prima facie tests is clearly different.  Under the ADEA, a plaintiff must demonstrate that he or she "was replaced by a substantially younger employee with equal or inferior qualifications."  <u>Beaulieu</u>, 161 F. Supp. 2d at 1146.  Under section 378-2, on the other hand, the plaintiff need only

show "that the position still exists." Shoppe, 94 Haw. at 378, 14 P.3d at 1059.

Moreover, even assuming Beaulieu's analysis were applicable to a state law claim, Beaulieu was decided before Shoppe. HMA was certainly aware of the Hawaii Supreme Court's Shoppe decision, as it cited it in its discussion of pretext. See Memorandum in Support of Motion at 21. Relying on Beaulieu, HMA misstated the elements of a prima facie age discrimination claim under section 378-2(1)(A).

Reyes has demonstrated a prima facie case of age discrimination in violation of section 378-2(1)(A). First, there is no dispute that Reyes is a member of a protected class based on age. In Schefke, the Hawaii Supreme Court recognized that "neither HRS § 378-2 nor Shoppe, Hawaii's first case involving age discrimination under HRS § 378-2, establishes a specific age for such discrimination." See Schefke, 96 Haw. at 441 n.63, 32 P.3d at 85 n.63 (contrasting section 378-2 with the Age Discrimination in Employment Act, which requires a minimum age of 40 for discrimination). It is undisputed that Reyes was HMA's oldest customer service representative while she was employed by HMA.

Second, there is, at a minimum, a question of fact as to whether Reyes was qualified for the position she lost. Reyes was a customer service representative for HMA. Reyes says that

11

she had previously worked for Queens Health Care Plan and the State of Hawaii, Department of Human Services, Child Care Licensing Unit, and that, in August 2006, she received an "outstanding" semi-annual evaluation from HMA.  <u>See</u> Declaration of Becanta T. Reyes (April 3, 2008) ¶¶ 2, 3, 9.  Although HMA has called into question Reyes's qualification for her job, stating that Reyes was unable "to maintain a courteous and professional demeanor," <u>see, e.g.</u>, Supp. Decl. of Harris Nakamoto (Apr. 10, 2008), Reyes has submitted sufficient evidence to this court regarding her qualifications to survive an argument that she was not qualified for the position.

Third, there is no dispute that Reyes suffered an adverse employment action, as she was terminated.  <u>See</u> <u>Shoppe</u>, 94 Haw. at 378, 14 P.3d at 1059 (noting that a discharge satisfies the adverse employment action requirement).

Fourth, there is no dispute that Reyes's position as a customer service representative still exists.  In fact, HMA has submitted a Staffing Form indicating that HMA sought permission to replace Reyes.  <u>See</u> Ex. 1 to Supp. Nakamoto Decl.  Harris Nakamoto, the general manager and vice president of HMA, also says that he "hired Constance Harrison to be a Customer Service Representative to replace Becanta Reyes." <u>Id.</u> ¶¶ 1, 5.

        2.    HMA Demonstrates Legitimate Nondiscriminatory
                <u>Reasons for Terminating Reyes's Employment.</u>

Under <u>Shoppe</u>:

12

> Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. The employer's explanation must be in the form of admissible evidence and must clearly set forth reasons that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the challenged employment action. Although the burden of production is shifted to the employer, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the plaintiff remains at all times with the plaintiff.

Shoppe, 94 Haw. at 378, 14 P.3d at 1059 (quotations, citations, and alterations omitted). Because Reyes demonstrates a prima facie case of age discrimination under section 378-2 for purposes of this motion, the burden shifts to HMA to demonstrate a legitimate, nondiscriminatory reason for terminating Reyes. For purposes of this motion, HMA satisfies this burden.

HMA has a corrective counseling policy. Under this policy, employees are given two warnings before being fired. These warnings need not be for the same types of misconduct. See Supp. Nakamoto Decl. ¶ 13; Employee Handbook (Ex. 17 to Reyes Deposition) at 4-8 ("Except in the case of major rule infractions described in Chapter 3, 'Major Rule Infractions', corrective counseling will be followed before an employee will be terminated: 1. First warning[;] 2. Second warning[;] 3. Termination of employment").

13

HMA says that it gave Reyes two corrective counseling warnings for excessive absenteeism and tardiness.  Leah Kamalu, the former Customer Service Lead for HMA, says that, on May 23, 2006, she issued a first corrective counseling warning to Reyes for excessive absenteeism and tardiness.  <u>See</u> Declaration of Leah Kamalu (Feb. 20, 2008) ¶ 9; Ex. 11 to Reyes's Depo. (copy of first corrective counseling warning).  Kamalu says that she also spoke to Reyes about her excessive absenteeism and tardiness, showing Reyes the first corrective counseling warning, but that Reyes refused to sign it.  <u>See</u> Kamalu Decl. ¶ 10.  In her deposition, Reyes denies ever having seen the first corrective counseling warning and asserts that Kamalu did not counsel her on May 23, 2006, regarding her excessive absenteeism and tardiness.  Videotaped Deposition of Becanta T. Reyes (Jan. 22, 2008) at 87.  However, in her Opposition, Reyes admits that "Defendants did give Plaintiff a first and second warning as to tardiness and attendance."  Opposition at 15.  Kamalu says that, after this first warning, Reyes's attendance improved, but her tardiness continued.  <u>Id.</u> ¶ 12.

On September 27, 2006, Kamalu says she issued a second corrective counseling warning to Reyes for excessive tardiness.  <u>See</u> Kamalu Decl. ¶ 13.  Kamalu says that she spoke to Reyes about this second warning.  <u>Id.</u> ¶ 13.  This second warning states:

> Bea was counseled before on her excessive
> tardiness and was advised to improve.

> Counseling took place on May 23, 2006.  Bea
> was asked to improve on her tardiness and
> absenteeism.  Since that writing[,] Bea's
> absenteeism has improved, however[,] Bea has
> been tardy a total of 11 times totaling to
> about 3½ hours.
>
>           . . . .
>
> Bea needs to come in at her start time[,]
> which is 8:00 a.m.  If she does not[,] it
> could lead to suspension and possible
> termination.

Ex. 12 to Reyes's Depo. (copy of second corrective counseling warning).  Reyes signed this warning, stating that she had "read this Corrective Counseling Report and [had] been given a chance to discuss it with [her] supervisor," and acknowledging that she understood "that any future violations may result in disciplinary action up to and including suspension and/or termination."  Her signature also acknowledged that, although she might not agree with the disciplinary action taken, "it [had] been communicated to [her]."  Id.  Although Reyes admits that the signature on the second corrective counseling warning is hers, she says that she does not remember ever having seen the warning.  Reyes Depo. at 88.  Given Reyes's concession in her Opposition that she received two warnings for tardiness and absenteeism, this court accepts HMA's account of its corrective counseling warnings.

Reyes was also reprimanded for rudeness to a customer in July 2006, although she says that she was being blamed for someone else's rudeness.  See Reyes's Depo. at 77, 80-81.

15

Additionally, Reyes was reprimanded for rudeness to a customer in October 2006.  On October 24, 2006, Reyes admittedly spoke "a little louder" to a customer.  She says that the customer was older and hard of hearing.  Reyes Depo. at 82.  Stacey Visitacion, the customer service supervisor for HMA, overheard this conversation.  Id.  Visitacion sent Reyes an email about the incident, telling her that the way she spoke to the customer really bothered Visitacion and that it was "unacceptable."  See Email from Stacey Visitacion to Becanta Reyes (Oct. 24, 2006, at 10:54 a.m.) (attached as Ex. 1 to Supplemental Declaration of Anne T. Horiuchi (Apr. 10, 2008)).

A series of emails followed about this October 2006 incident.  See Ex. 1 to Supp. Horiuchi Decl.  This led Nakamoto, the general manager and vice president of HMA, to have a counseling session with Reyes and Visitacion on October 27, 2006.  Nakamoto says that, at this session, he spoke to Reyes about her telephone conduct, as well as her need to improve attendance and punctuality.  Nakamoto Decl. ¶ 14.  Nakamoto says he documented the counseling session in a Memo for Record.  See Ex. A to Nakamoto Decl. (copy of Memo for Record).  Reyes denies that this counseling session ever took place and claims that Nakamoto's Memo for Record was fabricated for purposes of this lawsuit.  See Reyes's Decl. ¶¶ 17, 36.

16

About a month later, on November 22, 2006, Visitacion received a voicemail message from Mija Ku-Sakata of Castle Medical Center, complaining about a telephone conversation she had had with Reyes.  Declaration of Stacey Visitacion (Feb. 20, 2008) ¶ 9.  Visitacion says that she called Ku-Sakata back and asked her to send Visitacion a letter about the incident.  Id.  Later that day, Visitacion and Deborah Morishima, who had conducted training for customer service representatives, spoke with Nakamoto about the customer complaints and Reyes's lack of punctuality.  Id. ¶ 11.  Nakamoto decided to fire Reyes.  Id. ¶ 11; Nakamoto Decl. ¶ 21.

On November 29, 2006, Nakamoto did fire Reyes. Nakamoto Decl. ¶ 22.  Nakamoto says that he knew that Reyes had been counseled about her rudeness to customers and her punctuality.  He says that Ku-Sakata's complaint demonstrated that, despite counseling, Reyes's conduct was not improving and was, in fact, worsening.  Nakamoto says he did not want more customers complaining about Reyes.  Id. ¶¶ 18-19.  At the time Reyes was fired, she had been working for HMA for about 13 months.

If believed, HMA's explanation that Reyes was terminated because of her rudeness to customers and lack of punctuality demonstrates legitimate, nondiscriminatory reasons

17

for her termination.  See Shoppe, 94 Haw. at 378, 14 P.3d at 1059.

          3.    Reyes Has Failed to Raise a Genuine Issue of Fact as to Whether HMA's Stated Reasons for Terminating Her Were Pretextual.

        Shoppe sets forth a plaintiff's burden when an employer provides legitimate, nondiscriminatory reasons for its actions:

> [I]f the employer rebuts the prima facie case, the burden reverts to the plaintiff to demonstrate that the defendant's proffered reasons were pretextual.  A plaintiff may establish pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.  If the plaintiff establishes that defendant's proffered reasons were pretextual, the trier of fact may, but is not required to, find for the plaintiff.  At all times, the burden of persuasion remains on the plaintiff.

Shoppe, 94 Haw. at 378, 14 P.3d at 1059 (quotations, citations, and alterations omitted).

        Hawaii law does not clearly set forth the quantum of evidence necessary to demonstrate pretext.  Under the McDonnell-Douglas framework adopted by the Hawaii Supreme Court in Shoppe, 94 Haw. at 378, 14 P.3d at 1059, a plaintiff need offer "very little" direct evidence of pretext to defeat an employer's motion for summary judgment.  However, the Ninth Circuit reads McDonnell-Douglas as requiring that, when evidence of pretext is circumstantial, "that evidence must be 'specific and substantial'

to defeat the employer's motion for summary judgment."  Coghlan
v. Am. Seafoods Co., 413 F.3d 1090, 1095 (9th Cir. 2005).

Although the Hawaii Supreme Court adopted the
McDonnell-Douglas framework in Shoppe, it is unclear whether it
agrees with the Ninth Circuit that circumstantial evidence of
pretext must be "specific and substantial."  In Shoppe, the
Hawaii Supreme Court examined whether the evidence "reasonably
yield[ed] an inference that Defendant's reasons for terminating
Plaintiff were pretextual."  Shoppe, 94 Haw. at 382, 14 P.3d at
1063.  Whether this court applies the "specific and substantial"
or the "reasonably yields an inference" standard, Reyes fails to
raise a genuine issue of fact as to whether HMA's stated reasons
for terminating her were pretextual.

The court notes that, in its usual prehearing
inclination, Reyes was told that the court was inclined to rule
that the evidence in the record was insufficient to raise a
genuine issue of fact as to pretext.  The court also told Reyes
that its prehearing inclination was designed to "focus the oral
argument and permit the advocates to use the hearing to show the
judge why she is mistaken."  Inclinations (Apr. 18, 2008) (Docket
No. 65).  The court further told the parties that it "sometimes
departs from the inclination in light of oral argument."  Id.
While the court attempted at the hearing to engage Reyes in a
discussion about whether she could identify a genuine issue of

19

fact as to pretext, Reyes did not respond by identifying such an issue.

Reyes first argues that her firing for rudeness to customers was pretextual because rudeness was widespread and younger customer service representatives were not fired when they were rude.  See Opposition at 8.  In an email from Visitacion to Reyes, for example, Visitacion notes that she and others, in addition to Reyes, were guilty of being rude to customers.  See, e.g., Email from Stacey Visitacion to Becanta Reyes (Oct. 24, 2006 at 12:32 p.m.).  Reyes, however, fails to show that any other employee was similarly situated to her such that an inference could be drawn that Reyes was fired because she was older.  She does not, for example, demonstrate that any other worker had two corrective counseling warnings or had any other disciplinary issue when HMA management became aware of that worker's alleged rudeness to a customer.

The court questions whether Reyes's evidence of widespread and unpunished rudeness by others is admissible. Under Rule 56(e) of the Federal Rules of Civil Procedure, "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  It is not at all clear that the declaration statements Reyes submits to establish others' rudeness are based on personal

20

knowledge.  Even if her evidence of widespread and unpunished rudeness is admissible, Reyes does not raise a genuine issue of fact as to pretext.

For example, Reyes provides the Declaration of Karen Harada (Apr. 2, 2008), which states that complaints were made about certain coworkers, but the coworkers suffered no discipline as a result.  Not only is this declaration silent as to the source of Harada's purported knowledge of such matters, it fails to discuss the substance of the complaints or their validity. Absent even minimal detail, Reyes does not allege facts from which a reasonable inference would be drawn that HMA's stated reasons for terminating her were pretextual.  Certainly, Reyes does not satisfy the "specific and substantial" standard that the Ninth Circuit says <u>McDonnell-Douglas</u> requires when a plaintiff asserts pretext.

Reyes next argues pretext based on HMA's alleged fabrication of evidence and alleged failure to follow its employee handbook.  Reyes says that, when Nakamoto fired her, he said she was being fired for rudeness.  <u>See</u> Reyes Decl. ¶ 11. She argues that, because Nakamoto did not mention at that time that she was being terminated because she had received two earlier warnings for tardiness and poor attendance, HMA's reason for firing her must be pretextual.  She also argues that the stated reasons are pretextual because Nakamoto made up a November

2006 meeting and a memorandum to Reyes's personnel file about that purported meeting.  Even assuming Nakamoto failed to tell Reyes that she was being fired for rudeness, poor attendance, and excessive tardiness, and even assuming that HMA made up evidence of counseling session(s) and failed to follow its employee handbook, Reyes fails to raise a genuine issue of fact as to whether "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."  Shoppe, 94 Haw. at 378, 14 P.3d at 1059. HMA's alleged failings and fabrication, even if true, are not, on their face, tied to age bias, and Reyes presents no evidence of a tie.  Reyes simply asserts the failings and alleged fabrications.

Reyes does not dispute that she raised her voice to a customer or that she had problems with attendance and timeliness. She does not dispute that HMA received a complaint about her from Ku-Sakata.  Even if HMA failed to follow the procedures set forth in its employee handbook, that would be evidence of only a breach of contract.  That would not, without more, tend to demonstrate that Reyes was fired because she was 39 years old.

Reyes submits no evidence suggesting that HMA did follow its employee handbook's disciplinary procedures in cases involving younger employees who had had similar disciplinary problems.  See Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 346 (5th Cir. 2007) ("A defendant's failure to follow its

22

own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact.  Turner has introduced no evidence suggesting that RHA adhered to its disciplinary policies differently in cases involving non-minority employees.  Therefore, RHA's alleged failure to follow its policy does not serve to establish pretext." (quotation and citation omitted)).  Reyes submits no admissible evidence indicating that HMA failed to give younger employees corrective counseling warnings or that any younger employee who had two corrective counseling warnings was not fired upon committing a third infraction.

The court is similarly unpersuaded that HMA's alleged assignment of more work to Reyes, promotion of another employee, and wrongful reprimand of Reyes demonstrate discrimination based on Reyes's age.  Given the availability of other explanations unrelated to age, Reyes must do more than simply allege impropriety by HMA.  She must present some measure, even if small, of a connection between the alleged impropriety and her age, not just trot out allegations of impropriety that do not inherently carry any relation to age.  Without that connection, Reyes fails to "directly . . . persuad[e] the court that a

23

discriminatory reason more likely motivated the employer or indirectly . . . show that the employer's proffered explanation is unworthy of credence." Shoppe, 94 Haw. at 378, 14 P.3d at 1059 (quotations, citations, and alterations omitted).

In Shoppe, the Hawaii Supreme Court was unpersuaded by a claim of pretext based solely on the absence of a written reprimand and the lack of a statement in the plaintiff's separation form of a precise reason for her termination. These circumstances, by themselves, were insufficient to raise a genuine issue of fact as to pretext because they did not "reasonably yield an inference that Defendant's reasons for terminating Plaintiff were pretextual." See Shoppe, 94 Haw. at 368, 382, 14 P.3d at 1063. Reyes's claims also fail to reasonably yield an inference of pretext for age discrimination.

Finally, Reyes argues that the pretextual nature of HMA's proffered reasons for her termination is shown by HMA's hiring of a younger replacement for her. Reyes says that she was replaced by Melanie Tokioka, a person Reyes alleges is in her 20s. However, Reyes submits no admissible evidence that Tokioka replaced her or that she was in her 20s. The purported evidence Reyes does submit consists of statements by Pearl Au-Keliikoa and Karen Harada, but neither person's declaration demonstrates personal knowledge as to whether Tokioka actually replaced Reyes or the basis for any description of Tokioka as in her 20s. See

Decl. of Pearl Au-Keliikoa (Apr. 2, 2008) ¶ 14; Harada Decl. ¶ 9.

By contrast, Nakamoto says it was Constance Harrison, hired on December 11, 2006, who filled Reyes's position. Nakamoto Decl. ¶ 23; Ex. 1 to Supp. Nakamoto Decl. (Staffing Form - Replacement Position (indicating in the box in the top right corner that Harrison was being hired to replace Reyes). According to her personnel files, Harrison, born in 1963, was more than four years older than Reyes. Id. ¶ 24. Nakamoto also notes that Tokioka was hired after Harrison, and that Tokioka was born in 1969, making Tokioka only about two years younger than Reyes. Supp. Nakamoto Decl. ¶¶ 3-4.

Even assuming Tokioka replaced Reyes, no rational trier of fact could draw an inference of age discrimination based on HMA's hiring of a replacement who was only two years younger than Reyes was. See Dunphy v. Delta Airlines, Inc., 290 F. Supp. 2d 311, 316 (E.D.N.Y. 2003) ("Dunphy fails to establish a prima facie case of age discrimination based on Delta's decision not to promote him to Regional Manager because there is no evidence from which a rational finder of fact could draw an inference of discrimination. Indeed, the position was initially offered to another Delta employee (McGowan) who was 52 years old--only two years younger than Dunphy.").

Reyes says that, even if Harrison, rather than Tokioka replaced her, HMA only hired Harrison because it had received a demand letter from Reyes's counsel dated December 13, 2006.  This argument is not factually supported, as Harrison was hired two days before the date of the demand letter.  <u>Compare</u> Nakamoto Decl. ¶ 23; Ex. 1 to Supp. Nakamoto Decl. (Staffing Form - Replacement Position), <u>with</u> Ex. 11 to Plaintiff's Concise Statement (letter from Venetia K. Carpenter-Asui to Mark Dyer (Dec. 13, 2006)).

Because Reyes fails to raise a genuine issue of fact as to whether HMA's stated reasons for firing her are pretextual, HMA is entitled to summary judgment on her claim of age discrimination under section 378-2.

C.   HMA is Entitled to Summary Judgment on the Intentional Infliction of Emotional Distress Claim and the Request for Punitive Damages.

Having granted summary judgment in favor of HMA on Reyes's section 378-2 claim (Count I), the court also grants summary judgment to HMA on the intentional infliction of emotion distress ("IIED") claim (Count III) and on the request for punitive damages.  The only claim remaining is the breach of implied contract claim (Count II), which, the Hawaii Supreme Court has ruled, cannot, under normal circumstances, be the basis for emotional distress damages or punitive damages.  <u>See</u> <u>Francis v. Lee Enterprises, Inc.</u>, 89 Haw. 234, 240, 971 P.2d 707, 713

26

(1999) (noting in an employment discrimination case that "damages for emotional distress and mental suffering, as well as punitive damages, are generally not recoverable in contract"); id. at 242, 971 P.2d at 715 ("damages for emotional distress will rarely, if ever, be recoverable for breaches of an employment contract, where the parties did not bargain for such damages or where the nature of the contract does not clearly indicate that such damages were within the contemplation or expectation of the parties. Second, punitive damages will never be recoverable, absent conduct that violates a duty that is independently recognized by principles of tort law.").

At the hearing on the present motion, Reyes conceded that she could not maintain either claim based solely on the facts underlying her breach of contract claim. Thus, Reyes may only maintain her emotional distress and punitive damage claims to the extent the alleged age discrimination supports such claims.

The elements of an IIED claim are "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." Hac v. Univ. of Hawaii, 102 Haw. 92, 107, 73 P.2d 46, 61 (Haw. 2003). To prevail on a claim of IIED, a plaintiff must show that the defendant's acts were "unreasonable," meaning that they were without justification and

27

beyond the standards of decency.  See Shoppe, 94 Haw. at 397, 14 P.3d at 1068.  As a threshold matter, the court must determine whether the alleged acts were sufficiently unreasonable or outrageous to sustain a claim for IIED.  When reasonable minds could differ, the question is for the jury.  See id.  Given Reyes's failure to raise a genuine issue of fact as to whether she was discriminated against based on her age, Reyes cannot show that HMA's conduct was sufficiently outrageous to support her intentional infliction of emotional distress claim.

At the hearing on the present motion, Reyes conceded that her termination is the only basis for her IIED claim.  That is, she is not basing her IIED claim on, for example, her allegation that HMA fabricated evidence for the purpose of this lawsuit.  Reyes concedes that she did not discover the allegedly fabricated evidence until after she had filed her Complaint, indicating that the emotional distress claim included in her Complaint could not have been based on the alleged fabrication.

Reyes similarly cannot demonstrate a valid request for punitive damages based on the alleged violation of section 378-2. In Hawaii, punitive damages may be awarded

> where the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations; or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.

28

Masaki v. Gen. Motors Corp., 71 Haw. 1, 11, 780 P.2d 566, 572

(1989).  Failing to identify a factual issue as to whether HMA

discriminated at all on the basis of age, Reyes cannot identify a

genuine issue of fact as to whether HMA's alleged discrimination

was wanton or oppressive.

Accordingly, summary judgment is granted in favor of

HMA on Reyes's intentional infliction of emotional distress claim

(Count III), as well as on her request for punitive damages.

D.    Reyes's Rule 56(f) Request is Denied.

Reyes seeks a continuance of this motion pursuant to

Rule 56(f) of the Federal Rules of Civil Procedure to allow her

to conduct depositions that she noticed the day after she turned

in her Opposition.  This request is denied.

Rule 56(f) permits a district court to continue a

summary judgment motion when the party "opposing the motion shows

by affidavit that, for specified reasons, it cannot present facts

essential to justify its opposition."  Although the language of

Rule 56(f) was amended in December 2007, the comments clarify

that the amendments were intended only to be stylistic.

Accordingly, the court examines case law interpreting the amended

rule.

A party requesting a continuance bears the burden of

(1) filing a timely application which specifically identifies

relevant information; (2) demonstrating that there is some basis

to believe that the information sought exists; and

(3) establishing that such information is essential to resist the summary judgment motion.  See Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1130 (9th Cir. 2004) (citation omitted).  Reyes's counsel's submits no affidavit or declaration demonstrating that the recently noticed depositions would result in any evidence that would raise a genuine issue of fact that would preclude summary judgment.

Moreover, a district court may exercise its discretion to deny further discovery if the party moving under Rule 56(f) has failed to pursue discovery diligently in the past.  See Conkle v. Jeong, 73 F.3d 909, 914 (9th Cir. 1995); Bank of Am. v. Pengwin, 175 F.3d 1109, 1118 (9th Cir. 1999).  This case was filed more than one year ago.  HMA filed its motion for partial summary judgment on February 20, 2008. Reyes did not notice the depositions until April 4, 2008, a day after Reyes filed her Opposition to the motion.  See Ex. 13 to Plaintiff's Concise Statement.  Under these circumstances, a continuance of the motion is not warranted.

IV.      CONCLUSION.

For the foregoing reasons, the court grants HMA's motion for partial summary judgment on Counts I and III, and on

the request for punitive damages.  This order leaves for further adjudication Reyes's breach of implied contract claim, found in Count II of her Complaint.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 28, 2008.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge


Reyes v. HMA,. Inc., Civ. No. 07-00229 SOM/KSC; ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT